## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARON A. WRIGHT, | : | No. |
| Plaintiff | : | |
| | : | |
| vs | : | Civil Action – Law |
| | : | (Electronically filed) |
| COVENANT CHRISTIAN | : | |
| ACADEMY, INC., | : | |
| Defendant | : | Jury Trial Demanded |

## COMPLAINT

AND NOW, TO WIT, comes Plaintiff, Sharon A. Wright, by and through her counsel, Solomon Z. Krevsky, Esquire of Clark & Krevsky, LLC and files the following Complaint:

## INTRODUCTION

1. Plaintiff, Sharon A. Wright, (hereinafter "Wright"), brings this action against her former employer, Covenant Christian Academy, Inc., (hereinafter "Defendant" or "CCA") for claims arising under the Americans With Disabilities Act, 42 U.S.C.

§12101 et seq as amended by the ADA Amendments Act of 2008 (hereinafter "ADA") and the Pennsylvania Human Relations Act, 43 P.S. §951 et seq (hereinafter "PHRA") all of which relate to Plaintiff Wright's employment as a teacher with CCA and the May 12, 2010 unlawful discriminatory and retaliatory failure to renew Plaintiff's employment contract for the 2010/2011 academic year. The failure to renew Plaintiff's employment contract as a teacher for the 2010/2011 academic year constitutes adverse employment action.

2.     This is an action brought to remedy Defendant's violations of Plaintiff's civil rights under the ADA and PHRA, and to redress unlawful discriminatory and retaliatory conduct and employment practices. Plaintiff Wright alleges, *inter alia*, that Defendant unlawfully refused to accommodate Plaintiff's disability; discriminated against Plaintiff on the basis of her disability, her record of disability, and/or on account of its perception or regard of Plaintiff as an individual with a disability; and that Defendant retaliated against Plaintiff based on the exercise of her ADA and PHRA rights and/or attempt to exercise those rights resulting in the unwarranted failure to renew Plaintiff's employment contract for the 2010/2011 academic year.

## PARTIES, JURISDICTION AND VENUE

3.     Plaintiff Wright is an adult female who, at all relevant times hereto, resided in the Commonwealth of Pennsylvania and was formerly employed by Defendant.

4.     Defendant CCA is a Pennsylvania non-profit corporation employing fifteen (15) or more employees.  Defendant CCA operates a kindergarten through 12th grade classical Christian School founded in 1997 with a principal place of business located at 1982 Locust Lane, Harrisburg, PA 17109.

5.     This Honorable Court has jurisdiction pursuant to 28 U.S.C. §1331 as this case arises under the laws of the United States and pursuant to the ADA which provides for original jurisdiction.  This Court has jurisdiction over Plaintiff Wright's State claims pursuant to supplemental jurisdiction codified at 28 U.S.C. §1367.

6.     Venue lies within the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391 as the facts and occurrences, acts and/or omissions and incidents and/or actions alleged herein took place within this judicial district, and because the Defendant resides in the Middle District.

7.     At all relevant times hereto, Defendant CCA acted through its agents, apparent agents, servants, apparent servants and/or employees who were authorized and acting within the scope of authority, course of employment and/or under the direct control of Defendant CCA.

8.     All preconditions to the filing of this action, by way of pursuit of administrative remedies have been satisfied.  Plaintiff timely filed her Charge of Discrimination with the Pennsylvania Human Relations Commission, said charge

being dual filed with the U. S. Equal Employment Opportunity Commission ("EEOC").

9.      Plaintiff Wright sought from the EEOC a Notice of Right to Sue with respect to the above-referenced Charge of Discrimination.  The EEOC issued its Notice of Right to Sue on March 27, 2012 which was received by Plaintiff on March 28, 2012.

## UNDERLYING FACTS

10.     Plaintiff Wright commenced employment with Defendant CCA as a part-time teacher in approximately 2001.

11.     Commencing academic year 2002/2003, Plaintiff became employed by Defendant CCA in a full-time capacity as a teacher.

Commencing academic year 2008/2009, Defendant's Headmaster was Joseph Sanelli.

12.     During academic year 2009/2010, Plaintiff served as Defendant's Fifth Grade Teacher.

13.     In this capacity, Plaintiff reported to Defendant's Grammar School Principal, Gloria Stucky.

14.     Defendant embraces historic Christianity as represented in the tradition of the Protestant Reformation.

15.　　In its Core Values, Defendant CCA purports to hold to a distinctly Reformed doctrinal tradition while welcoming and respecting other Christian perspectives in the CCA community.

16.　　Defendant CCA views homosexuality as a sin.

17.　　Throughout her employment with Defendant, Plaintiff was qualified to perform all duties associated with her position and carried out such duties in a satisfactory manner.

18.　　Throughout her employment with Defendant, Plaintiff enrolled her two sons as students at Defendant CCA.

19.　　In October 2009, upon information and belief October 12, 2009, Plaintiff's eldest son (then a senior in high school at Defendant CCA) announced his homosexual orientation (hereinafter "Declaration") on a social media blog.

20.　　When Defendant CCA learned of Plaintiff's son's Declaration, it took steps to immediately suspend him from school.

21.　　In this regard, Mr. Sanelli instructed Plaintiff and her husband that their son should not report to school the next day until the matter could be fully discussed.

22.　　Shortly after Plaintiff's son's Declaration, Plaintiff and her husband met with Mr. Sanelli, Ms. Stucky, and Defendant's Upper School Principal, Robyn Burlew.

23.     At said meeting, Plaintiff was informed that her son was to be permanently

suspended from school and would not be permitted to return until he "renounced his

sin".

## PLAINTIFF OPENLY DISAGREES WITH CCA'S DOCTRINAL BELIEF ON HOMOSEXUALITY

24.     At that meeting, throughout October 2009, and at various times throughout the

2009/2010 academic year, Plaintiff and/or her husband advised Defendant CCA that

after consultation with various psychiatric, psychological and pediatric professionals

they had come to the conclusion that their son's sexual orientation was already

determined, that it would be potentially harmful to try to "reprogram" him, that they

had decided their best course of action was to support him and love him for who he

is, and that they could not agree that homosexuality is a sin.

25.     During the aforementioned meeting with Mr. Sanelli, Ms. Stucky and

Ms. Burlew, Plaintiff and/or her husband expressed that they disagreed with CCA's

doctrinal position on homosexual behavior, criticized said position, and would not

force their son to renounce his sexual orientation as sin.

26.     Both Ms. Stucky and Ms. Burlew stated to the Plaintiff shortly after the

October 2009 meeting that they thought Plaintiff's son's continued attendance at

Defendant CCA would be "good for the school".

27.     In addition, Ms. Burlew informed Plaintiff that she (Ms. Burlew) would "go out on a limb" to recommend that Plaintiff's son be permitted to return to school at Defendant CCA.

28.     Ms. Burlew stated that, in her opinion, "everyone struggles with sin" and that the Plaintiff's son is no different.

29.     In a letter dated October 15, 2009, Mr. Sanelli confirmed that Plaintiff's support of her son "in no way affects the employment of Sharon here at CCA or the enrollment of [her son]. We support Sharon and consider her a valuable member of the faculty…"

30.     In connection with Plaintiff's son's Declaration and the discussions, emails and writings exchanged between Plaintiff, her husband, and Defendant subsequent thereto, an agreement was reached, the material terms of which included the following:

    a.     Plaintiff's employment would not be adversely affected in any way by this situation.

    b.     Plaintiff's younger son's enrollment would not be adversely affected in any way by the situation.

    c.     Plaintiff and her family would be permitted to attend Defendant's functions and be involved in the School's community.

    d.     Plaintiff's eldest son would not be permitted to attend Defendant CCA as an "in school" student.

e.  Defendant and Plaintiff would work together to provide Plaintiff's son with textbooks, assignments, and school work for the remainder of the first trimester.

f.  Defendant's teacher, Jesse Hake, would serve as a proctor for Plaintiff's son's school work.

g.  Prior to the start of the second trimester, Defendant would provide Plaintiff's son with the academic requirements needed to graduate from Defendant CCA.

31.  At no time during the discussions referenced above or communications between Defendant and Plaintiff did Defendant instruct Plaintiff that <u>she</u> must renounce her son's sexual orientation as a sin in order to retain her employment status with Defendant.

32.  Throughout the 2009/2010 school year, several members of Defendant CCA's organization proffered unsolicited opinions to Plaintiff and her husband concerning their son's Declaration including the following:

a.  CCA Board Member, Rich Raynor stated to Plaintiff "your son is broken, and it's your job to fix him…[his] homosexuality was likely because he didn't bond with [his father] as a child…"

b.  Leslie Raynor (Rich Raynor's wife) stated to Plaintiff that this was a "battle for [your son's] soul" and opined that he "may have been abused as a child".

c.  Mrs. Burlew stated that there may be "nothing [your son] can do to change his homosexual feelings, but that as a result he will have to refrain from acting on those feelings".

33.     Plaintiff and her husband openly questioned and criticized Defendant's

doctrinal position on homosexual behavior, including but not limited to the

following:

      a.     Plaintiff's husband challenged Mr. Raynor's opinions and
               observations and voiced his disagreement with CCA's doctrinal
               belief of homosexuality as a sin.

      b.     Plaintiff challenged Ms. Raynor's opinions and observations and
               firmly communicated her belief that her son was born with a
               homosexual orientation.

      c.     Plaintiff informed Ms. Stucky that she disagreed with Defendant
               CCA's doctrinal belief of homosexuality as a sin, and  that she
               would never try to change her son or require him to "renounce his
               sin".

      d.     Plaintiff challenged Defendant's doctrinal position on homosexuality
               by providing to CCA teacher, Jesse Hake, a DVD of the movie *For
               the Bible Tells Me So* which discloses biblical misinterpretations of
               scripture regarding homosexuality, and  stating that she agrees with
               the principles expressed therein.

## PLAINTIFF DEVELOPS MENTAL HEALTH IMPAIRMENTS

34.     The judgments and comments from CCA Board members, administrators, and

faculty, as more fully described in paragraph 30, caused damage to Plaintiff's psyche

and emotional wellbeing.

35.     Over the course of the 2009/2010 school year, Plaintiff began to experience

increased symptomatology associated with her mental health diagnoses which

included adjustment disorder with mixed anxiety and depressed mood (hereinafter "mental health impairments").

36.    For the remainder of the 2009/2010 school year, Plaintiff was subjected to scathing condemnation and blame which was the proximate cause of her mental health impairments.

37.    Plaintiff's mental health impairments substantially limited major life activities including but not limited to thinking, concentrating, interacting with others, and sleeping.

38.    Plaintiff's mental health impairments and the symptoms associated with same are long standing in duration and potentially permanent.

39.    Accordingly, Plaintiff's mental health impairments constitute a "disability" as that term is defined under and pursuant to the PHRA and ADA.

40.    Notwithstanding Plaintiff's disability and/or disabilities, she was able to perform the essential functions of her job.

## MAY 7, 2012 PLAINTIFF REQUESTS REASONABLE ACCOMMODATIONS

41.    In approximately January 2010, Plaintiff requested time off from work on account of her disability (hereinafter "medical leave of absence").

42.    Plaintiff's request for a medical leave of absence was granted.

43.     In support of Plaintiff's request for a medical leave of absence, she informed Ms. Stucky that she could not sleep as a result of her disability and was openly crying in Ms. Stucky's office as a result of same.

44.     In fact, Ms. Stucky recommended that Plaintiff treat with a mental health professional and provided Plaintiff with a referral to a therapist.

45.     Plaintiff informed Defendant that she suffered with mental health impairments including those described above.

46.     Defendant knew that Plaintiff suffered with mental health impairments including but not limited to those described.

47.     Shortly after Defendant learned of Plaintiff's disability, Ms. Stucky explained that she and Mr. Sanelli believed Plaintiff would benefit from taking a year off of work in order to "heal" and encouraged Plaintiff to consider a sabbatical for the 2010/2011 academic year or potentially work in a part-time capacity.

48.     Plaintiff informed Defendant that she would consider the proposal.

49.     On May 7, 2010, Ms. Stucky reiterated that Plaintiff "needed a year to heal" and attempted to impose upon Plaintiff an involuntary sabbatical for the 2010/2011 academic year.

50.     At that time, Ms. Stucky confided to Plaintiff that she herself had not fully healed emotionally and continued to experience emotional pain as a result of her husband's marital improprieties.

51.    Plaintiff refused to agree that she needed a year off to "heal", rejected Defendant's attempt to impose an involuntary sabbatical, and reinforced her willingness and ability to continue as a full-time teacher for the 2010/2011 academic year.

52.    At that time, Plaintiff advised Ms. Stucky that she was perfectly capable of performing the essential functions of her job as a teach and, if necessary, would coordinate intermittent medical leaves of absence similar to Plaintiff's medical leave of absence in January 2010.

53.    Plaintiff's request for intermittent medical leaves of absence constituted a request for a reasonable accommodation under and pursuant to the ADA and PHRA.

54.    Upon hearing Plaintiff's request for reasonable accommodation including intermittent medical leaves of absence, Ms. Stucky immediately informed Plaintiff that she could not  recommend to Mr. Sanelli that Plaintiff continue her full-time position for the following year.

55.    In fact, Ms. Stucky did recommend to Mr. Sanelli that Plaintiff not be offered a full-time position for the 2010/2011 academic year.

56.    Ms. Stucky informed Plaintiff that Plaintiff's request for intermittent medical leave was the reason Ms. Stucky could not recommend to Mr. Sanelli that Plaintiff be offered a full-time position for the 2010/2011 academic year.

57.     By rejecting Plaintiff's request that she work a full-time position with a reasonable accommodation in the form of intermittent medical leaves of absence, asserting that Plaintiff "needed a year to heal", Ms. Stucky perceived Plaintiff as disabled within the meaning of the ADA and PHRA.

58.     Ms. Stucky recommended to Mr. Sanelli that Plaintiff not be offered a full-time position for the 2010/2011 academic year because of Plaintiff's disability, Plaintiff's requests for reasonable accommodations, and/or Ms. Stucky's perception or regard of Plaintiff as disabled.

### MAY 12, 2010 DEFENDANT REFUSES TO RENEW  PLAINITFF'S EMPLOYMENT CONTRACT

59.     On May 10, 2010, Plaintiff delivered a private writing to Ms. Stucky and Mr. Sanelli reiterating her position regarding her son's Declaration, rejecting Defendant's perception that Plaintiff "needed a year to heal", reiterating her desire to continue as a full-time teacher for the 2010/2011 academic year with reasonable accommodations, and seeking answers for why Defendant was imposing upon Plaintiff an involuntary sabbatical.

60.     On May 12, 2010, Defendant informed Plaintiff that it would not be renewing her contract as a teacher for the 2010/2011 academic year (hereinafter "termination").

61.     Defendant asserts that Plaintiff was not offered a contract for the 2010/2011 academic year because in her May 10, 2010 letter Plaintiff publicly attacks CCA's

position on homosexual behavior which included calling those who held such positions "bigots".

62. Defendant's ostensible basis for refusing to renew Plaintiff's employment contract for the 2010/2011 academic year is wholly without basis in fact and a pretense for intentional discrimination and retaliation.

63. In fact, nowhere in her May 10, 2010 letter does Plaintiff use the word "bigot" to describe her feelings toward those at CCA with whom Plaintiff disagreed with respect to Defendant's doctrinal position on homosexual behavior.

64. Moreover, days before Plaintiff's May 10, 2010 letter Defendant, by and through its agent, Ms. Stucky, recommended that Plaintiff not be offered a full-time position for the 2010/2011 academic year, as more fully described above.

## COUNT I –DISCRIMINATION

### AMERICANS WITH DISABILITY ACT OF 1990, AS AMENDED
FAILURE TO REASONABLY ACCOMMODATE
ACTUAL DISABILITY
Sharon A. Wright v. Covenant Christian Academy, Inc.

65. Plaintiff repeats and repleads Paragraphs 1 through 64 of this Complaint, as more fully set forth at length and incorporates herein by reference.

66. Plaintiff requested reasonable accommodations on account of her disability in the form of intermittent medical leaves of absence, as more fully described above.

67.     Defendant knew that Plaintiff's disability required, from time to time, reasonable accommodations.

68.     Defendant knew that Plaintiff requested, from time to time, reasonable accommodations as a result of her disability.

69.     The reasonable accommodations requested by Plaintiff, if granted, would have permitted Plaintiff to perform the essential functions of her job.

70.     The reasonable accommodations requested by Plaintiff did not and would not have imposed upon Defendant CCA an undue burden.

71.     Nevertheless, Defendant failed or otherwise refused to implement or continue the reasonable accommodations requested by Plaintiff.

72.     Defendant's policy manual regarding discrimination states that it does not discriminate "on the basis of sex, race, color, age, disabilities, or national origin in any aspects of employment including recruitment, hiring, placement, job performance, training, compensation, transfer, promotion, and/or termination".

73.     However, in its policy manual, Defendant's disability policy states that it will "make accommodations for the physically challenged where and whenever necessary, appropriate and reasonable.  Any physical limitation must be reported on the Covenant Christian Academy employment application prior to employment. Covenant Christian Academy will not be responsible for any injuries resultant of failure to report physical limitations".  (emphasis added).

74.     Defendant's policy does not address accommodations required on account of mental health impairments or related disabilities.

75.     Defendant's policy is to accommodate employees with physical disabilities, but its practice is to refuse to accommodate employees with mental health related disabilities.

76.     Defendant refused to grant and/or implement Plaintiff's requests for reasonable accommodations in the form of intermittent medical leaves of absence.

77.     Defendant violated the ADA by refusing to grant and/or implement Plaintiff's requests for reasonable accommodations in the form of intermittent medical leaves of absence.

78.     Moreover, Defendant violated the ADA by failing to participate in the interactive process designed to cooperatively identify reasonable accommodations required by law that would permit Plaintiff to perform the essential functions of her job.

79.     Defendant violated the ADA when it denied full and equal membership rights to Plaintiff and discriminated against her because of her actual disability with respect to hire, tenure, terms, conditions and/or privileges of her employment.

80.     By failing to grant or implement reasonable accommodations and failing to participate in the interactive process designed to identify reasonable accommodations

that would permit Plaintiff to perform the essential functions of her job, Defendant violated the ADA on the basis of Plaintiff's disability.

81.     Defendant willfully violated the ADA when it discriminated against Plaintiff because of her actual disability.

82.     As a result of Defendant's willful violations of the ADA, Plaintiff has suffered damages, including loss of reputation, lost back pay and benefits, front pay and benefits, loss of future income and growth opportunities, damage to her career and earning capacity, loss of happiness and well-being, and other emotional distress and compensatory damages.

83.     As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered and will continue to suffer loss of employment, lost wages, extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of life.

84.     The acts complained of were extreme and outrageous, and were engaged in with malice and/or reckless indifference to Plaintiff's well being, thereby entitling her to punitive damages, and claim is made therefore.

<u>COUNT II -- DISCRIMINATION</u>

<u>AMERICANS WITH DISABILITY ACT OF 1990, AS AMENDED</u>
FAILURE TO RENEW EMPLOYMENT CONTRACT
DISABILITY/PERCEIVED DISABILITY/RECORD OF DISABILITY
<u>Sharon A. Wright v. Covenant Christian Academy, Inc.</u>

85.    Plaintiff repeats and repleads Paragraphs 1 through 84 of this Complaint, as more fully set forth at length and incorporates herein by reference.

86.    Plaintiff is a member of a class of individuals protected against discrimination in the workplace on account of a disability, a record of disability, and/or the perception that Plaintiff is an individual with a disability.

87.    Plaintiff has been subjected to continuing discrimination and disparate treatment on the basis of her disability, her record of disability, or Defendant's perception of her as an individual with a disability, in a manner affecting the terms and conditions of her employment and resulting in Defendant's failure to renew Plaintiff's employment contract.

88.    Defendant knew that Plaintiff suffered with a disability as a result of her mental health impairments and that she requested reasonable accommodations on account of same.

89.    By way of illustration, Plaintiff requested a reasonable accommodation on the basis of her disability in the form of a medical leave of absence in approximately January 2010, and requested intermittent medical leaves of absences on May 7 and

May 10, 2010 in the event symptoms associated with her underlying disability became exacerbated in the future.

90.     Defendant granted Plaintiff's request for a medical leave of absence in January 2010.

91.     However, because Defendant knew or suspected that the seriousness of Plaintiff's disability might require future intermittent medical leaves of absence, Defendant refused to renew Plaintiff's employment contract rather than accommodate future foreseeable requests for accommodations with intermittent medical leaves.

92.     In addition and/or in the alternative, Defendant refused to renew Plaintiff's employment contract erroneously believing that Plaintiff "needed a year to heal" because of an actual or perceived impairment that is not both transitory and minor.

93.     Defendant's policy manual regarding discrimination states that it does not discriminate "on the basis of sex, race, color, age, disabilities, or national origin in any aspects of employment including recruitment, hiring, placement, job performance, training, compensation, transfer, promotion, and/or termination".

94.     However, in its policy manual, Defendant's disability policy states that it will "make accommodations for the physically challenged where and whenever necessary, appropriate and reasonable.  Any physical limitation must be reported on the Covenant Christian Academy employment application prior to employment.

Covenant Christian Academy will not be responsible for any injuries resultant of failure to report physical limitations".  (emphasis added).

95.     Defendant's policy does not address accommodations required on account of mental health impairments or related disabilities.

96.     Defendant's policy is to accommodate employees with physical disabilities, but its practice is to discriminate against employees with mental health related disabilities and/or those it perceives to have an impairment that is not both transitory and minor.

97.     Defendant CCA discriminated against Plaintiff on account of her mental health related disability (her record of disability, or Defendant's perception of Plaintiff as an individual with a mental health disability) including but not limited to the following:

    a.    Encouraging Plaintiff to accept part-time employment for the 2010/2011 academic year.

    b.    Attempting to impose upon Plaintiff an involuntary sabbatical for the 2010/2011 academic year.

    c.    Discouraging Plaintiff from working in a full-time capacity for the 2010/2011 academic year.

    d.    Informing Plaintiff that she "needed time to heal" overtly manifesting Defendant's perception of Plaintiff as an individual with a disability.

    e.    Refusing to grant or implement reasonable accommodations.

    f.    Failing to adhere to policies concerning equal employment opportunities.

g. Failing to renew Plaintiff's employment contract for the 2010/2011 academic year.

h. Failing to renew Plaintiff's employment contract for the 2010/2011 academic year despite prior repeated assurances that the situation involving her son's Declaration would not adversely affect Plaintiff's employment.

98. Defendant possessed no legitimate business justification for its refusal to renew Plaintiff's employment contract.

99. In fact, Defendant communicated to Plaintiff no legitimate business justification for its refusal to renew Plaintiff's employment contract.

100. Any purported basis for terminating Plaintiff's employment is a pretext for unlawful discrimination on the basis of Plaintiff's disability, her record of disability, or Defendant's perception of Plaintiff as an individual with a mental health disability.

101. Moreover, upon information and belief non-disabled employees similarly situated to Plaintiff who have requested accommodations similar to those requested by Plaintiff were not terminated from employment with Defendant.

102. Defendant subjected Plaintiff to discrimination and disparate treatment on the basis of Plaintiff's disabilities, her record of disabilities, and/or Defendant's perception of Plaintiff as an individual with a mental health disability.

103. Upon information and belief, Plaintiff's position was replaced by an individual outside of Plaintiff's protected class.

104.    Upon information and belief, Plaintiff's position was replaced by an individual who is not perceived by Defendant as suffering from mental health disabilities.

105.    Defendant's unlawful discrimination and disparate treatment, as more fully described above, resulted in adverse employment action.

106.    Defendant violated the ADA when it denied full and equal membership rights to Plaintiff and discriminated against her because of her actual disability, her record of disability and/or Defendant's perception or regard of Plaintiff as an individual with a disability with respect to hire, tenure, terms, conditions and/or privileges of her employment.

107.    Defendant willfully violated the ADA when it discriminated against Plaintiff because of her actual disability her record of disability and/or Defendant's perception or regard of Plaintiff as an individual with a disability.

108.    As a result of Defendant's willful violations of the ADA, Plaintiff has suffered damages, including loss of reputation, lost back pay and benefits, front pay and benefits, loss of future income and growth opportunities, damage to her career and earning capacity, loss of happiness and well-being, and other emotional distress and compensatory damages.

109.    As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered and will continue to suffer loss of employment, lost wages,

extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of life.

110. The acts complained of were extreme and outrageous, and were engaged in with malice and/or reckless indifference to Plaintiff's well being, thereby entitling her to punitive damages, and claim is made therefore.

## COUNT III -- RETALIATION

### AMERICANS WITH DISABILITY ACT OF 1990, AS AMENDED
### FAILURE TO RENEW EMPLOYMENT CONTRACT
### Sharon A. Wright v. Covenant Christian Academy, Inc.

111. Plaintiff repeats and repleads Paragraphs 1 through 110 of this Complaint, as more fully set forth at length and incorporates herein by reference.

112. Plaintiff's use of a reasonable accommodation in the form of a medical leave of absence, as more fully described above, is protected activity under and pursuant to the ADA.

113. Plaintiff's requests for intermittent medical leaves of absence as a reasonable accommodation, as more fully described above, is protected activity under and pursuant to the ADA.

114. Defendant retaliated against Plaintiff as a result of her requests for and/or use of reasonable accommodations including but not limited to the following:

    a.    Failing to participate in the interactive process designed to cooperatively identify a reasonable accommodation required by law.

    b.     Encouraging Plaintiff to accept part-time employment for the 2010/2011 academic year.

    c.     Attempting to impose upon Plaintiff an involuntary sabbatical for the 2010/2011 academic year.

    d.     Discouraging Plaintiff from working in a full-time capacity for the 2010/2011 academic year.

    e.     Informing Plaintiff that she "needed time to heal" overtly manifesting Defendant's perception of Plaintiff as an individual with a disability.

    f.     Refusing to grant or implement reasonable accommodations.

    g.     Failing to adhere to policies concerning equal employment opportunities.

    h.     Failing to renew Plaintiff's employment contract for the 2010/2011 academic year.

    i.     Failing to renew Plaintiff's employment contract for the 2010/2011 academic year despite prior repeated assurances that the situation involving her son's Declaration would not adversely affect Plaintiff's employment.

.

115.  Defendant's unlawful retaliation, as more fully described above, resulted in adverse employment action.

116.  Defendant violated the ADA when it denied full and equal membership rights to Plaintiff and retaliated against her because of her protected activities, as more fully described above, with respect to hire, tenure, terms, conditions and/or privileges of her employment.

117.    Defendant willfully violated the ADA when it retaliated against Plaintiff because of her because of her protected activities, as more fully described above.

118.    As a result of Defendant's willful violations of the ADA, Plaintiff has suffered damages, including loss of reputation, lost back pay and benefits, front pay and benefits, loss of future income and growth opportunities, damage to her career and earning capacity, loss of happiness and well-being, and other emotional distress and compensatory damages.

119.    As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered and will continue to suffer loss of employment, lost wages, extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of life.

120.    The acts complained of were extreme and outrageous, and were engaged in with malice and/or reckless indifference to Plaintiff's well being, thereby entitling her to punitive damages, and claim is made therefore.

<u>COUNT IV -- DISCRIMINATION</u>

<u>PENNSYVANIA HUMAN RELATIONS ACT</u>
FAILURE TO REASONABLY ACCOMMODATE
FAILURE TO RENEW EMPLOYMENT CONTRACT
<u>Sharon A. Wright v. Covenant Christian Academy, Inc.</u>

121.    Plaintiff repeats and repleads Paragraphs 1 through 120 of this Complaint, as more fully set forth at length and incorporates herein by reference.

122.   The actions and/or omissions identified herein, as more fully set forth above and incorporated hereto by reference, violate the Pennsylvania Human Relations Act, 43 P.S. §955 et seq.

123.   Defendant violated the PHRA when it denied full and equal membership rights to Plaintiff and discriminated against her because of her actual disability, her record of disability and/or Defendant's perception or regard of Plaintiff as an individual with a disability with respect to hire, tenure, terms, conditions and/or privileges of her employment.

124.   Defendant willfully violated the PHRA when it discriminated against Plaintiff because of her actual disability her record of disability and/or Defendant's perception or regard of Plaintiff as an individual with a disability.

125.   As a result of Defendant's willful violations of the PHRA, Plaintiff has suffered damages, including loss of reputation, lost back pay and benefits, front pay and benefits, loss of future income and growth opportunities, damage to her career and earning capacity, loss of happiness and well-being, and other emotional distress and compensatory damages.

126.   As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered and will continue to suffer loss of employment, lost wages, extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of life.

## COUNT V -- RETALIATION

### PENNSYVANIA HUMAN RELATIONS ACT
### FAILURE TO RENEW EMPLOYMENT CONTRACT
### Sharon A. Wright v. Covenant Christian Academy, Inc.

127.    Plaintiff repeats and repleads Paragraphs 1 through 126 of this Complaint, as more fully set forth at length and incorporates herein by reference.

128.    The actions and/or omissions identified herein, as more fully set forth above and incorporated hereto by reference, violate the Pennsylvania Human Relations Act, 43 P.S. §955 et seq.

129.    Defendant violated the PHRA when it denied full and equal membership rights to Plaintiff and retaliated against her because of her protected activities, as more fully described above, with respect to hire, tenure, terms, conditions and/or privileges of her employment.

130.    Defendant willfully violated the PHRA when it retaliated against Plaintiff because of her because of her protected activities, as more fully described above.

131.    As a result of Defendant's willful violations of the PHRA, Plaintiff has suffered damages, including loss of reputation, lost back pay and benefits, front pay and benefits, loss of future income and growth opportunities, damage to her career and earning capacity, loss of happiness and well-being, and other emotional distress and compensatory damages.

132. As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered and will continue to suffer loss of employment, lost wages, extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of life.

WHEREFORE, Plaintiff Wright requests this Honorable Court to enter judgment in her favor and against the Defendant for:

1. Back pay and benefits;

2. Front pay and benefits should reinstatement prove unfeasible;

3. Statutory prejudgment interest;

4. Compensatory damages;

5. Reasonable costs and attorney fees;

6. Punitive damages; and

7. An Order prohibiting Defendant its officers, successors and assigns, and all persons in active concert or participation with it from engaging in unlawful disability discrimination and/or retaliation for engaging in protected activities, and any other employment practice which discriminates on the basis of a disability;

8. An Order requiring Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for

individuals with disabilities and which eradicate the effects of past and present unlawful employment practices;

9.    An Order requiring Defendant to institute and carry out a complaint procedure which encourages employees to come forward with complaints regarding violations of its policies against discrimination, harassment, and retaliation;

10.    An Order requiring Defendant to institute and carry out a training program which shall promote supervisor accountability, imposing on all managers and supervisory personnel a duty to actively monitor the work area to ensure compliance with policies on non-discrimination, and requiring all managers and supervisors to report any incidents and/or complaints of discrimination, harassment and/or retaliation of which they become aware to the department charged with handling such complaints;

11.    Any other relief that this Court deems just and equitable.

Respectfully submitted,

CLARK & KREVSKY, LLC


By: s/ Solomon Z. Krevsky
Solomon Z. Krevsky, Esquire
Attorney for Plaintiff
Supreme Ct. I.D. #72719
20 Erford Road, Suite 300A
Lemoyne, PA 17043
(717) 731-8600
(717) 731-4764 fax
e-mail:  szk@clark-krevskylaw.com